## Goldbacher v. Cooley.

*Attorney-at-law—Fees—Compensation for securing release from insane asylum—Competency to contract.*

1. Where an inmate of an insane asylum has been found sufficiently competent to be released, it will be presumed that he was sufficiently competent to contract with an attorney-at-law to secure his release.

2. The attorney's fee in such case is not to be gauged by the client's wealth or by the blessing of freedom.

3. It is to be determined by expert proof as to the value of his services.

Trial by court without jury.   C. P. Luzerne Co., July T., 1923, No. 575.

*Neil Chrisman* and *Edmund W. Kirby,* for plaintiff.

*James L. Morris,* for defendant.

FULLER, P. J.—The action is *assumpsit,* duly referred to judge without jury under the Act of April 22, 1874, P. L. 109, to recover fees and expenses in connection with professional services rendered by plaintiff, as attorney-at-law, to defendant in obtaining the latter's release from an hospital for the insane.

The amount claimed is $5000.

In defence it is urged (1) that defendant, being insane, is not liable at all; (2) that the plaintiff agreed to obtain an absolute discharge, but only obtained a parole; (3) that the amount claimed is grossly excessive and unreasonable.

We overrule the first defence, because if defendant was sane enough to be released, he was surely sane enough to bind himself on contract with an attorney to obtain his release.

Also, we overrule the second defence, finding as fact that the plaintiff only undertook to obtain release from custody and not an absolute discharge.

But we sustain the third defence, and for reasons hereinafter stated allow only $1000, with interest.   The facts are:

1. Defendant, by order of this court April 27, 1908, was adjudged insane and committed as such to an asylum, finally coming by transfer into the State Hospital for the Insane at Norristown, Pa.

2. On Sept. 23, 1921, plaintiff began visiting the defendant, going from Philadelphia to Norristown, making twelve visits between that date and Dec. 6, 1921, when he was admitted to the bar at Philadelphia, and thirty-six subsequent visits, down to Aug. 29, 1922, when he brought defendant, after release, to Philadelphia.

These visits seem to have been rather of a friendly and social than of a professional nature, and at least no professional purpose or service, or necessity therefor, or the consumption of time is disclosed in the testimony, although the subject of release was occasionally discussed.

On each visit plaintiff received from defendant $5, which was ample to cover expenses.

Feb. 27, 1922, plaintiff attended to certain bank matters for defendant at Philadelphia, but the matters are not specified.

At one time, by intercession with the hospital management, plaintiff obtained for defendant what is termed "ground parole;" that is, the privilege of enjoying the outdoor premises of the institution unattended.

3. July 29, 1922, plaintiff came from Philadelphia to Wilkes-Barre for the purpose of interviewing a judge of the court and defendant's trustee, Mr. Darling, a lawyer, on the subject of release.

The judge expressed willingness to grant parole if satisfactory recommendation of physicians should be obtained and presented.

Goldbacher *v.* Cooley.

The plaintiff then returned to Philadelphia, proceeded to prepare and procure the affidavits of three physicians, whose aggregate charge for the service amounted to $275, whereof plaintiff has paid $60 out of his own pocket.

On Aug. 16, 1922, plaintiff made a second visit to Wilkes-Barre to present the formal petition, accompanied by the affidavits for release.

Each visit to Wilkes-Barre consumed a day, at an expense for the two visits of about $40, on account of which the defendant paid him $115.

4. On Aug. 22, 1922, plaintiff's efforts were consummated in an order of parole by the court.

Afterwards he brought the defendant to Philadelphia, where he had arranged for boarding accommodations, and made two trips to Norristown to inquire about defendant's clothing. Here ended plaintiff's connection with the business.

Later, the court, without plaintiff's participation, modified the order of parole into an order of absolute discharge.

5. The defendant during all of this time was mentally capable of transacting business and binding himself to compensate an attorney for legal services.

No amount, however, had been named at any time between the parties, and the claim of $5000 was advanced by this action, brought May 23, 1923, without any apparent prior discussion of the matter.

6. In fixing that amount, the plaintiff surely escapes any suspicion of being self-depreciatory.

He has called no other attorneys to sustain his charge.

He naively says: "I think my fee should be $5000, including expenses.

"I think defendant should be willing to pay at least $100 for the ground parole.

"My charge should be based upon ability of individual to pay and result securing his freedom.

"I would have charged nothing if he had been a poor man without estate.

"It took me possibly three or four hours to prepare petition, possibly fifteen or twenty minutes to prepare the affidavits.

"I base my charge on fact of what a man's freedom is worth."

He had just been admitted to the bar, and his practical knowledge of law had been chiefly acquired as a student and assistant in a law office.

This particular business, however, made little demand on learning, skill or experience, and encountered no difficulty.

It simply involved procuring the affidavits, preparing a short petition, and presenting the latter to the court, without brief or argument, and without any need for such.

Four attorneys of high standing and long experience at this bar have fixed the value of his services, two at $500, one at $500 to $650, and one, assuming that all the visits were necessary, which is not proved, at $900.

In the face of this heavily preponderant proof, not to mention our own opinion, educated by thirty years of practice and seventeen years on the bench, we fail to find persuasion in the plaintiff's "I think my fee should be $5000," even though based on the length of his client's purse and the blessing of freedom regained.

We are well aware that it is common practice for professional men, doctors, as well as lawyers, to fit the fee to the purse, and we do not condemn the practice if thereby poverty obtains service below value and wealth is not charged above value.

Goldbacher v. Cooley.

Similar service has similar value for poor and rich alike, and while the poor man may be charged less, the rich should not be charged more, than the service is reasonably worth, for this would be unethical and unprofessional.

Nor can we deem the result of freedom regained a very material factor in this case, for on that standard, since the value of freedom, like the value of life, is beyond computation, the compensation of the attorney's service might easily lead to confiscation of the client's property, although the service, as here, might involve no particular learning, skill, experience or difficulty.

Guided by what we conceive to be the proper considerations, we say:

7. The reasonable fees earned by plaintiff amount to $800.

All his expenses have been fully paid except the physicians' bills, $275, on which $75 should be credited defendant out of the payment of $115, allowing therefrom $40 for expenses.

Thus, defendant owes plaintiff for fees and expenses $1000.

The defendant has submitted a request for what on jury trial would be the equivalent of binding instructions, by motion to enter judgment in his. favor upon the pleadings and evidence in the case, which motion is denied, because we find from the evidence just liability for fees and expenses as above fixed.

Hence, we find as law the plaintiff is entitled to recover $1000, with interest from Aug. 22, 1922, and judgment should be entered in his favor as of the present date for $1085, subject to exception as provided by law.

From F. P. Slattery, Wilkes-Barre, Pa.